AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Oregon

FILED 6 FEB '18 15:19 USDC-ORP

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

As described in Attachments A-1, A-2, A-3, and A-4

)
)
)
)
)
)

Case No.

**'18 -MC-086 # - ₯**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

As described in Attachments A-1, A-2, A-3, and A-4 hereto,

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized):*
The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 1343, 1001 | Conspiracy, wire fraud, false official statements |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Christopher Miller, Special Agent, VA OIG CID
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  2/06/18

_____
*Judge's signature*

City and state:  Portland, Oregon

Paul Papak, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:        AFFIDAVIT OF CHRISTOPHER MILLER

## Affidavit in Support of an Application
## Under Rule 41 for a Search Warrant

I, Christopher Miller, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent (SA) with the Department of Veterans Affairs Office of

Inspector General Criminal Investigations Division (OIG CID) and have been since October 2014.

I was previously employed as a Special Agent with U.S. Secret Service from July 2006 to October

2014.  My current assignment is to the Northwest Field Office in the Portland, Oregon Resident

Agency.  My training and experience includes criminal law and procedure training at the Federal

Law Enforcement Training Center (FLETC) in Glynco, Georgia and at the U.S. Secret Service

Academy in Beltsville, Maryland.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search the premises located at 150 NE Hogan Drive,

Gresham, Oregon, 20 NE Hogan Drive, Suite 110, Gresham, Oregon, 16 NE Hogan, Suite 112,

Gresham, Oregon, and 16 NE Hogan Drive, Suite 110, Gresham, Oregon (hereinafter "Subject

Premises"), as described in Attachments A-1, A-2, A-3, and A-4 hereto, for evidence, contraband,

fruits, and instrumentalities of violations of Title 18, United States Code, Section 371, Conspiracy;

Title 18, United States Code, Section 1343, Wire Fraud; and Title 18, United States Code, Section

1001, False Official Statements.   As set forth below, I have probable cause to believe that such

property and items, as described in Attachment B hereto, including digital devices or electronic

storage media, are currently located at 150 NE Hogan Drive, Gresham, Oregon, 20 NE Hogan

Drive, Suite 110, Gresham, Oregon, 16 NE Hogan, Suite 112, Gresham, Oregon, and 16 NE

Hogan Drive, Suite 110, Gresham, Oregon.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4. Title 18, United States Code, Section 1001, criminalizes false statements to the government. The statute reads in pertinent part: Whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully – (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined or imprisoned as directed under this title.

5. Title 18, United States Code, Section 1343, criminalizes wire fraud. The statute reads in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined [as directed under this title.]

6.     Title 18, United States Code, Section 371, criminalizes conspiracy to defraud the

United States.  The statute reads in pertinent part: If two or more persons conspire either to

commit any offense against the United States, or to defraud the United States, or any agency

thereof in any manner or for any purpose, and one or more of such persons do any act to effect the

object of the conspiracy, each shall be fined under this title or imprisoned not more than five years,

or both.

## GLOSSARY

| ENTITY | ACRONYM | DEFINITION |
|---|---|---|
| Veterans Administration | VA | Government agency overseeing veterans affairs programs |
| National Cemetery Authority | NCA | Government entity within VA overseeing cemetery operations |
| Government Services Administration | GSA | Government Agency overseeing government contracting business certifications |
| Service Disabled Veteran Owned Small Business | SDVOSB | VA administered program for set-aside contracts for specially designated veteran owned businesses |
| Veteran Owned Small Business | VOSB | VA administered program for set-aside contracts for veteran owned businesses |
| Veterans Choice Services | VCS | Oregon based SDVOSB certified business engaging in government contracts |
| Center for Verification and Evaluation | CVE | VA entity administering SDVOSB program; previously known as Center for Veterans Enterprise |
| Small Business Administration | SBA | Government agency overseeing small business contracting programs and small business certification |

**Page 3 – Affidavit of Christopher Miller**          **USAO Version Rev. April 2017**

| Vetbiz Vendor Information Pages Verification Program Form | VA Form 0877 | Business certification required as part of SDVOSB certification |
|---|---|---|
| Beneficiary Identification Records Locater Subsystem | BIRLS | Electronic information system used and administered by the VA which includes veteran eligibility status and related information. |
| System for Award Management | SAM | Database managed by GSA which combined the CCR, ORCA, and EPLS into one main contractor database. You must complete the above SAM registrations in order to work as a federal contractor |
| VetBiz Vender Information Pages | VIP | A Veteran business database that lists businesses that are 51% or more owned by Veterans or service-connected disabled Veterans. It is used to promote and market VOSB and SDVOSBs. |
| Online Representations and Certifications Application | ORCA | GSA registrations required to engage in federal contracting |
| Central Contractor Registration | CCR | GSA registrations required to engage in federal contracting |
| Excluded Parties List System | EPLS | GSA list of parties the US government has debarred from engaging in contracting |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 4 – Affidavit of Christopher Miller**          **USAO Version Rev. April 2017**

## Statement of Probable Cause[1]

## SERVICE DISABLED VETERAN OWNED SMALL BUSINESS (SDVOSB) PROGRAM

7.      The SDVOSB program is administered by the SBA and VA.   Congress created a

separate requirement for the Veterans Administration (VA) to administer a verification program

for the SDVOSB program.

8.      VA Small Business Regulations, codified in 38 CFR Part 74, describe the

requirements for a company to qualify as an SDVOSB.   Some of the key requirements are as

follows:

a.      The Service Disabled Veteran(s) must have a service-connected disability

that has been determined by the VA or the United States Department of Defense;

b.      The Service Disabled Veteran(s) must unconditionally own 51% of the

SDVOSB and this ownership must be direct;

c.      The Service Disabled Veteran(s) must be the highest paid person, and

---

[1]  Based on my training and experience, I use the following technical terms to convey the
following meanings:

a.      *IP address*.   The Internet Protocol address (or simply "IP address") is a unique
numeric address used by digital devices on the Internet.   Every digital device attached to the
Internet must be assigned an IP address so that Internet traffic sent from and directed to that digital
device may be directed properly from its source to its destination.   Most Internet service providers
control a range of IP addresses.   Some digital devices have static—that is, long-term—IP
addresses, while other digital devices have dynamic—that is, frequently changed—IP addresses.

b.      *Internet*.   The Internet is a global network of digital devices that communicate
with each other.   Due to the structure of the Internet, connections between devices on the Internet
often cross state and international borders, even when the devices communicating with each other
are in the same state.

c.      *Storage medium*.   A storage medium is any physical object upon which data can be
recorded.   Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other
magnetic or optical media.

receive 51% of profits and/or the annual stock distribution;

     d.     The Service Disabled Veteran(s) must control both the day-to-day

management/daily operations and long term decision making of the SDVOSB; and

     e.     The Service Disabled Veteran must hold the highest officer position in the

SDVOSB, and control the board of directors, if applicable.

     9.     Entities wishing to operate as a SDVOSB must certify to the Center for Verification

and Evaluation (CVE) their status on a VA Form 0877. The VA Form 0877 includes the

following warning statement:

> By electronically signing or faxing this signed form to (202) 303-3330, I affirm that
> the articles of incorporation (or other legal documents establishing the business) are
> filed with my state and such articles established that at least 51% of the business is
> owned by veterans or service-disabled veterans, or eligible surviving spouses, as
> required by 38 U.S. Code Section 8127 (l) (2) and 38 Code of Federal Regulations
> Part 74. I affirm that each of the owners of the business (or in the case of a business
> with stock, each of the stockholders) is eligible to participate in Federal contracting
> and that neither the business nor any of the individual owners appears on the
> Excluded Parties List at as identified in Federal Acquisition Regulation 9.404-3. I
> further affirm that I have read and understand the language in 38 Code of Federal
> Regulations Part 74 and that the business is controlled by individuals eligible to
> participate in the VOSB or SDVOSB verification program. A false statement on
> any part of your application may be punished by fine or imprisonment (U.S. Code,
> Title 18, Section 1001). I understand that any information I give may be
> investigated as allowed by law or Presidential order. I certify that, to the best of my
> knowledge and belief, all of my statements are true, correct, complete, and made in
> good faith. Misrepresentations of VOSB or SDVOSB eligibility may result in
> action taken by VA officials to debar the business concern for a period not to
> exceed 5 years from contracting with VA as a prime contractor or a subcontractor.

     10.     CVE is required to check the VA Beneficiary Identification Records Locater

Subsystem (BIRLS) and to review the following documents, which must be submitted by the

SDVOSB to CVE:

     a.     "General Information" documents, including business and/or personal

professional, industry, and/or other licenses, permits or accreditations and resumes of all owners, directors, partners, officers and other key personnel;

    b.    "Financial Information," including IRS Federal Tax Forms and all applicable schedules for the company and joint venture for the past three years, signature cards authenticated by financial institutions, and copies of approximately 20 negotiated company checks;

    c.    "Management Information," including leases, management, and services agreements, to include supporting payments, and operating agreements, including all amendments; and

    d.    "Legal Structure" documents, including ownership, partnership and/or shareholder agreements, equity participation or equity plans, official certificate of formation and operating agreement, minutes of first and most recent stockholder and Board of Directors meetings, all corporate bylaws, articles of organization for LLCs, articles/certificate of incorporation, joint venture agreement, and stock registers for applicant or stock ledgers.

11.    A government contract is "set-aside" for a SDVOSB if market research reveals that two or more SDVOSBs are capable of meeting the requirements of the government contract.   A solicitation is published through various resources (www.fbo.gov), which advertise the work to be performed in the SDVOSB set-aside solicitation and contract.

12.    After the close of the solicitation period, all offers from prospective bidders/offerors are reviewed by a "source selection team" to evaluate the technical merits and ensure that prices are fair and reasonable.   During the source selection process, the contracting

officer conducts a "responsibility check" for each offeror to make sure it meets the criteria set forth above. The responsibility check may include reviewing several government databases, including the VetBiz Vender Information Pages (VIP), System for Award Management (SAM), Online Representations and Certifications Application (ORCA), Central Contractor Registration (CCR), Excluded Parties List System (EPLS), and other publically available databases, such as Dun and Bradstreet (D&B) records. If the lowest bidding contractor is certified in VetBiz and SAM as being a SDVOSB, and the contractor is also in good standing with D&B and EPLS, then the contract is awarded to the contractor. In general, the contracting officer does not conduct an independent investigation into the veracity of the self-certifications of the SDVOSB.

13.     Individual SDVOSBs can bid on contracts by themselves, or they can form joint ventures (often with larger companies) and still potentially qualify for an SDVOSB contract, if the joint venture meets the following conditions:

     a.     A SDVOSB must manage the joint venture and an employee of the SDVOSB must be the designated project manager responsible for performance of the SDVOSB contract; and

     b.     Not less than 51% of the net profits earned by the joint venture must be distributed to the SDVOSB(s).

## Fraud Scheme

14.     As discussed below in detail, I submit that there is probable cause to believe that Veterans Choice Services (VCS) and Valleyscapes, namely Anthony Sessions, Adam Lowery, and Jonathan (Jon) Clark, fraudulently attempted to, and VCS did, receive SDVOSB certification by providing CVE false information on its SDVOSB application. This was done in order to provide

**Page 8 – Affidavit of Christopher Miller**          **USAO Version Rev. April 2017**

Valleyscapes with a proxy or "pass thru" business able to bid on SDVOSB "set-aside" contracts. Current owners of Valleyscapes, Clark and Lowery, do not possess the military service rated disability to apply for SDVOSB status. If Clark and Lowery would have applied for SDVOSB certification through Valleyscapes it would have required Sessions be the majority owner of Valleyscapes, which he was not.

15. As a result, VCS, namely Sessions, Lowery, and Clark, received VA contracts, valued at more than $1,000,000, which they were not legally authorized to receive. I submit that there is probable cause to believe that these acts were in violation of Title 18, United States Code, Section 371, Conspiracy; Title 18, United States Code, Section 1343, Wire Fraud; and Title 18, United States Code, Section 1001, False Official Statements, and that evidence, fruits, and instrumentalities of those crimes are likely to be found in the business locations of Valleyscapes and VCS located at 150 NE Hogan Drive, Gresham, OR, 20 NE Hogan Drive, Suite 110, Gresham, Oregon, 16 NE Hogan, Suite 112, Gresham, Oregon, and 16 NE Hogan Drive, Suite 110, Gresham, Oregon.

## Relevant Businesses & SDVOSB Certifications

16. Extensive searches of the Oregon Secretary of State Business registry database and other sources have shown continual overlapping business interests between VCS and Valleyscapes. The following was identified from business registrations in Oregon.

a. Valleyscapes Inc.: registry number 429240-92, was registered on April 17, 2007. The registered agent was listed as Brian Clark, and incorporators were listed as Brian Clark, Adam Lowery, and Jon Clark. On August 11, 2016, Valleyscapes listed its officers as Adam Lowery and Jon Clark. Valleyscapes listed its principal place of

Page 9 – Affidavit of Christopher Miller                    USAO Version Rev. April 2017

business as 150 NE Hogan Drive, Gresham, Oregon.

      b.     VCS: registry number 1248937-93 was registered on September 12, 2016. The registered agent was listed as Anthony Walter Sessions, mailing address 20 NE Hogan Drive, Gresham, Oregon.   The incorporators were listed as Adam Lowery, Jonathan Clark, and Anthony Sessions.

      17.     Investigation identified that the listed office location of VCS, 16 NE Hogan Drive, Suite 110, Gresham, Oregon, is located in close proximity to Valleyscapes office spaces 16 NE Hogan Drive, Suite 112, Gresham, Oregon, 20 NE Hogan Drive, Suite 110, Gresham, Oregon, and 150 NE Hogan Drive, Gresham, Oregon.   16 NE Hogan Drive Suites 110 and 112 and 20 NE Hogan Drive Suite 110 are all suites located within the same building, 16/20 NE Hogan Drive, are located on the first floor.   150 NE Hogan Drive is located in the property adjacent to 16/20 NE Hogan Drive and is less than 100 feet from the 20 NE Hogan Drive entrance to Valleyscapes.   See photo below.



18.     Searches of VA records obtained from CVE included numerous statements and documents submitted by Anthony Sessions, Jonathan Clark, and Adam Lowery on behalf of VCS. As noted above, only VCS received SDVOSB status.

19.     A review of its SDVOSB application showed that VCS VA Form 0877 was filed by Sessions, stating he was the majority owner, 51%, of VCS on October 3, 2016.   Adam Lowery and Jonathan Clark also filed 0877s on October 3, 2016, as minority owners, with 24.5% each. All 0877s reflected a business address of 20 NE Hogan Drive, Gresham, Oregon.   Of note, each VA Form 0877 has a warning regarding false statements.

20.     Sessions started VCS's SDVOSB application with CVE on September 22, 2016.

CVE communicated with Sessions via phone (503-957-9829) and email

(Anthony@veteranschoice.net). Jonathan Clark also contacted CVE via telephone on behalf of

VCS.

21. With regards to office space leasing, VCS provided CVE with a lease agreement

with Burlingame Properties LLC, dated effective November 1, 2016, for 16 NE Hogan Drive,

Suite 110, Gresham, Oregon. The lease agreement was signed on October 31, 2016, by Sessions

and Clark. (Of note, Sessions did not provide an updated lease to CVE showing Valleyscapes

assumed VCS lease.)

22. CVE initially denied VCS's application and asked for additional information. As

a result, Sessions provided the following responses, dated November 29, 2016, to questions about

his business **(responses are in bold below)**:

    a. Does the company operate from a commercial office or home office space?
**Yes.** If a commercial office, did the veteran sign the lease? **Yes.**

    b. Does the veteran have additional employment? If so, please list additional
employers. **Yes, Valleyscapes Inc.**

    c. If so, how much time is dedicated to the applicant-company and how is the
veteran able to maintain control of the applicant. **40 hours a week – currently
Veterans Choice Services does not have any non-owner employees or contracts.
Therefore, very little time is needed to manage the day to day operations for Veterans
Choice Services. Once Veterans Choice Services acquires its SDVOSB status the
veteran, Anthony Sessions, will voluntarily cease his employment with Valleyscapes
and will work solely for Veterans Choice Services.**

**Page 12 – Affidavit of Christopher Miller**        **USAO Version Rev. April 2017**

      d.     Does the company share any employees, equipment, phone lines, website, email services, business location or contracts for service with any other company? **Yes. Adam Lowery, Jonathan Clark, and Anthony Sessions all currently work for Valleyscapes. No other resources are or will be shared between the two companies. Both companies have their own address, phones, email, and equipment...At no point, will these two companies compete with each other or provide any conflict or undue influence. Once Veterans Choice Services gets awarded their SDVOSB status, Anthony Sessions will work solely for Veterans Choice Services and voluntarily cease his employment from Valleyscapes.**

23.     Sessions provided CVE his resignation letter from Valleyscapes, dated January 3, 2017, which stated his last day was January 3, 2017. Valleyscapes Human Resources employee Terri Browning provided CVE a letter, dated January 3, 2017, confirming Sessions' resignation. It stated, "this is to confirm the acceptance of your [Sessions] resignation which we received on January 3, 2017. It has been a pleasure working with you. Valleyscapes would like to thank you for your service and efforts and wishes you the best of luck in your future endeavors."

24.     Based upon the above responses from Sessions, VCS received its SDVOSB certification effective January 17, 2017. The CVE approval letter addressed to Sessions included the following notification: VCS must inform CVE of any changes or other circumstances that would adversely affect its eligibility. Eligibility changes not reported to CVE within 60 days could result in a referral to the Office of Inspector General (OIG), a referral to the Debarment and Suspension Committee.

**Veterans Choice Services: VA Fort Logan Contract**

25. A search of contracts awarded to VCS showed they were awarded VA contract VA786-17-C-127 on May 10, 2017. VA contract VA786-17-C-127 was a Firm Fixed price services contract which was originally solicited in February 2017. The contract was a "Set-Aside" for only SDVOSB certified businesses. Of note, this meant that only SDVOSB certified businesses could bid and be awarded the contract.

26. The contract was for cemetery services at the VA Fort Logan NCA in Denver, Colorado. The contract specifically called for:

> The Department of Veteran Affairs, Fort Logan National Cemetery intends to award a fixed price contract to install concrete grade beam headstone support systems; remove the conflicting underground irrigation laterals and sprinkler heads, and reinstall a new, fully functional irrigation system including testing; remove, raise, realign, reset, and clean designated sections of turf in designated burial sections with additional earthwork in certain sections; and trim/prune trees. The Fort Logan National Cemetery is located at 4400 W. Kenyon Avenue, Denver, Colorado 80235. To complete the upright headstone raise and realignment and turf renovation project at the Fort Logan National Cemetery, following the technical approach in this Statement of Work (SOW) in order to maintain the high standards of appearance as a National Shrine, in accordance with best commercial practices and the requirements identified in the solicitation.

27. On March 1, 2017, VCS bid a total of $408,065.00 for the project. Within the technical capabilities section, Sessions detailed the following:

> The majority owner of Veterans Choice Services is Anthony Sessions. Anthony was a former Assistant Director of Ft. Logan National Cemetery located in Denver, Colorado as well as Ft. Lyon national Cemetery located in Las Animas, Colorado...He has successfully completed...Foreman Bootcamp, Certified contracting officers representative...Anthony will oversee the project and work directly with the COTR...Anthony Sessions will be the Superintendent on the project.

28. The Independent Government Cost Estimate (IGE) listed a potential contract cost

of $425,046 – only VCS bid below the IGE.  VCS was evaluated at the lowest price technically

acceptable.  The final signed contract listed the following: VCS, 20 NE Hogan Drive, Gresham,

Oregon 97030, Data Universal Numbering System (DUNS) 080392674, email

Anthony@veteranschoice.net.  The total amount of the contract award was listed as $408,065.

29.     At present, VCS has been paid over $51,236.31 to its Chase Bank account ending in

6795 in fulfillment of the Fort Logan NCA contract.  The fulfillment of the contract is ongoing.

Each of the invoices in this investigation from VCS's cemetery contract were submitted

electronically via interstate wire (fax), and the payments on the invoices under those contracts

were made by wire from the U.S. Treasury center in Austin, Texas, and Kansas City, Missouri, to

VCS's Chase Bank account.  VCS was paid via its account at Chase Bank.  The deposits were

eventually made available for withdrawal at branches in Gresham, Oregon.

### Veterans Choice Services: Banking Information

30.     I reviewed financial documents from Chase Bank obtained via grand jury subpoena

for the VCS account ending in 6795.  The signature card for the VCS's account listed its address

as 20 NE Hogan Drive, Gresham, Oregon.  The account was opened on October 21, 2016, by

Jonathan Clark, secretary.  Anthony Sessions was added to the account on October 26, 2016, and

Adam Lowery was added on October 27, 2016.  The initial funding for the account was a $1,000

personal check from Jonathan Clark dated October 21, 2016, via Bank of America.  Another

deposit dated June 28, 2017, for $1,750 was deposited by Valleyscapes.  The memo section of

check listed "general liability and bond."  Several transactions showed additional deposits into

the VCS account by Valleyscapes.  A check deposited on September 6, 2017, from Valleyscapes,

signed by Adam Lowery, to VCS for $1,500 listed VCS's address as 16 NE Hogan Drive, Suite

**Page 15 – Affidavit of Christopher Miller**                    **USAO Version Rev. April 2017**

110, Gresham, Oregon.   A check deposited on September 8, 2017, from Valleyscapes to VCS for $4,000 was signed by Jonathan Clark.

## Valleyscapes: Banking Information

31.    I reviewed financial documents received from US Bank via grand jury subpoena for accounts associated with Valleyscapes, VCS, Anthony Sessions, Adam Lowery, and Jonathan Clark.   Of note, were transactions associated with Valleyscapes' US Bank Business Edge Travel Rewards account ending in 0145.   The account listed Valleyscapes' billing address as 20 NE Hogan Drive, Gresham, Oregon.   The corporate account, ending in 3444, listed numerous individual account users, including Jonathan Clark, Adam Lowery, and Anthony Sessions. Sessions' account showed purchases after he had reportedly resigned from Valleyscapes in January 2017.   Sessions' account showed he had purchases in January 2017, February 2017, March 2017, and May 2017.   Of note were Sessions' purchases starting in June 2017.   These included 15 different purchases in the Denver, Colorado, area between June 2017 and July2017, including purchases for airline tickets from Portland to Denver via United and Frontier Airlines. Sessions' purchases also included 19 different purchases in the Denver, Colorado, area between July 2017 and August 2017, including purchases at The Home Depot, Sunbelt Rentals #395, and Dollar Rent-A-Car.   Of note, the VCS Fort Logan NCA contract work is located in Denver, Colorado.

32.    I also reviewed results from a grand jury subpoena to Chase for Valleyscapes' related accounts.   I determined that Valleyscapes had numerous accounts with Chase.   Account ending in 0321 listed Valleyscapes' address as 150 NE Hogan Drive, Gresham, Oregon through April 2017 and was changed to 20 NE Hogan Drive, Gresham, Oregon in May 2017.   Similarly,

**Page 16 – Affidavit of Christopher Miller**                    **USAO Version Rev. April 2017**

account ending in 2920 also listed Valleyscapes' address as 150 NE Hogan Drive and was changed

to 20 NE Hogan Drive in May 2017.

**Leasing Documents**

**16/20 NE Hogan Drive Owned by Burlingame Properties LLC**

33.     On August 4, 2017, I interviewed Bridgett Burlingame, Burlingame Properties

LLC, property manager/owner of 16/20 NE Hogan Drive, Gresham, Oregon. 1 6/20 NE Hogan

Drive contains numerous suites numbered both 16 and 20 NE Hogan Drive which are accessed via

a common entrance and shared common space.     Adam Lowery contacted her regarding leasing

space for Valleyscapes.     Lowery also set up the lease for VCS.     She has never received a rent

check from VCS – Valleyscapes' secretary often paid the rent for both entities.     Valleyscapes uses

the VCS space as a conference/meeting room.     Bridgett noted she was never asked to put VCS on

the tenant list in the foyer of the building and had never met Anthony Sessions.

34.     I served Burlingame Properties LLC with an Inspector General (IG) subpoena for

documents related to the leases of VCS and Valleyscapes.     The documents provided showed that

on April 4, 2016, Valleyscapes leased 20 NE Hogan Drive, Suite 110, Gresham, Oregon, from

Burlingame Properties.     Adam Lowery was listed as Valleyscapes' representative.     Lowery

signed the lease agreement on April 5, 2016, and Bridgett Burlingame signed on behalf of

Burlingame Properties.     An addendum to the lease showed Valleyscapes added an additional

space, 16 NE Hogan, Suite 112 to the lease starting on May 15, 2017.     On November 1, 2016,

VCS leased 16 NE Hogan Drive, Suite 110, Gresham, Oregon, from Burlingame Properties.     The

lease was dated October 31, 2016, and had an illegible signature for VCS and Bridgett Burlingame

on behalf of Burlingame Properties.     VCS's lease was amended on April 18, 2017, to cancel the

lease and transfer all obligations to Valleyscapes. The signature for VCS was illegible. On the same day, Valleyscapes amended its lease to accept VCS obligations, signed by Jonathan Clark on behalf of Valleyscapes.

35. On January 29, 2018, I contacted the Burlingame Properties LLC and spoke with owner Donna Burlingame. She verified Valleyscapes' and VCS's leases were still active and neither entity had leased additional office space. See attachments A-2, A-3, and A-4 for photos of 20 NE Hogan Drive, Suite 110, and 16 NE Hogan, Suites 110 and 112.

**150 NE Hogan Drive Owned by Marc Nelson Oil Products Inc.**

36. On October 5 2017, I reviewed documents received from an IG subpoena served on Marc Nelson Oil Products Inc. The subpoena requested lease information associated with Valleyscapes and VCS. On January 28 2015, Brian Clark and Adam Lowery, on behalf of Valleyscapes, signed a lease with Marc Nelson Oil Products Inc. for the property known as 150 NE 242nd Street, Gresham, Oregon, lot 1600. The lease was valid through January 31, 2018.

37. On February 6 2015, Brian Clark and Lowery, on behalf of Valleyscapes, signed a lease with Marc Nelson Oil Products Inc. for the property known as 150 NE 242nd Street, Gresham, Oregon, lot 1700. The lease was valid through January 31, 2018. An addendum was signed on the above-mentioned leases on August 12, 2016, by Jon Clark and Adam Lowery on behalf of Valleyscapes. The lease listed it was for the properties collectively known as 150 NE Hogan Drive, Gresham, Oregon. The lease removed Brian Clark and replaced him with Jon Clark and added an additional five year renewal option. See attachment A-1 for photos of 150 NE Hogan Drive.

**Page 18 – Affidavit of Christopher Miller**                    **USAO Version Rev. April 2017**

## Employment Department Records

38.    I also served an IG subpoena on the Oregon Employment Department (OED) for earnings records associated with Valleyscapes and VCS.   Records revealed the following:

a.    Anthony Sessions reported cumulative earnings of $77,469.33 at Valleyscapes from the third quarter of 2016 through the second quarter of 2017.

b.    Adam Lowery reported cumulative earnings of $207,847.24 at Valleyscapes from the third quarter of 2014 through the second quarter of 2017.

c.    Jon Clark reported cumulative earnings of $20,846 for the third and fourth quarter of 2014.   Of note, Clark's current primary residence is in Washington State and he reported $219,138.84 in cumulative wages to Washington State OED as an employee of Valleyscapes from the first quarter of 2015 through the third quarter of 2017.

d.    Oregon OED noted it was unable to locate any record of VCS payroll, including no reported earnings for Sessions, Lowery, or Clark at VCS.

## Overlapping Business Interests

39.    Government Services Administration (GSA) SAM database showed the following regarding Valleyscapes' and VCS's SAM registrations: Valleyscapes last updated their SAM accounts on July 28, 2016, and September 28, 2016, from Internet Protocol (IP) address 96.85.128.206.   VCS last updated its SAM accounts on January 17, 2017, also from IP address 96.85.128.206.   The government business contacts were listed as: Valleyscapes Jon@valleyscapes.net and VCS adam@veteranschoice.net.   VCS listed a financial account email contact as jon@veteranschoice.net.   The accounts receivable contacts were listed as: Valleyscapes adam@valleyscapes.net and VCS adam@veteranschoice.net.

40.     Additionally, as a result of an IG subpoena, the Oregon Secretary of State

Corporation Division provided records which showed IP addresses associated with business

filings, registrations, and payments from both Valleyscapes and VCS.   Valleyscapes' Annual

Report dated April 30, 2017, was filed from IP address 96.85.128.206 and VCS's Articles of

Incorporation dated September 12, 2016, was also filed from IP address 96.85.128.206.

41.     Comcast internet provider records received via grand jury subpoena indicate that IP

address 96.85.128.206 is associated with subscriber Valleyscapes at 20 NE Hogan Drive,

Gresham, Oregon 97030.   The subscriber information included contact Adam Lowery.   Comcast

records also indicated an additional account attributed to Valleyscapes at 150 NE Hogan Drive,

Gresham, Oregon.   Comcast was unable to find any accounts associated with VCS or Anthony

Sessions.

### Veterans Choice Services: VA Tahoma Contracts

42.     More recent searches show VCS was awarded VA contracts VA786-17-P-0706 and

VA786-17-P-0719 on August 21, 2017, as purchase orders for projects at the Tahoma National

Cemetery located at 18600 SE 240th Street, Kent, Washington 98042.   On August 16, 2017, VA

Contracting Officer (CO) Joseph Mendoza advised the original contractor for the

above-mentioned projects, Avartara LLC, was unable to complete the project and "walked off the

site."   As a result Mendoza provided "sole source justification" for the awarding of both

VA786-17-P-0706 and VA786-17-P-0719 to VCS.   Mendoza noted VA Acquisition Regulation

(VAAR) 819.7007 allowed for the sole source awarding to a SDVOSB with an estimated cost of

$245,000.   The sole source justification allowed for the award made through other than full and

open competition.   Of note, VCS would not have qualified for these contracts without SDVOSB

**Page 20 – Affidavit of Christopher Miller**             **USAO Version Rev. April 2017**

certification.

43.     On August 16, 2017, Anthony Sessions, Anthony@veteranschoice.net, emailed

CO Mendoza, copying Adam Lowery, adam@veteranschoice.net, and Jon Clark,

jon@veteranschoice.net, numerous documents regarding VCS's bid on the modification to the

irrigation system at the Tahoma National Cemetery.   The documents included estimates for

VA786-17-P-0706, valued at $7,500 and VA786-17-P-0719 valued at $212,424.   The historical

contract documents showed the Independent Government Cost Estimate (IGCE) for

VA786-17-P-0719, created by M. Gaussa on April 6, 2017, was valued at $222,000.   The scope of

work included:

> The Tahoma National Cemetery requires a series of irrigation modifications,
> retro-fits, and repairs to allow the central irrigation control system to monitor flow
> and shut down the system in the event of a catastrophic mainline break. Several
> design features do not conform to the manufacturers printed instructions. These
> non-conforming features are to be corrected. Other retrofit and repairs are directed
> at replacing vandalized copper wire and making provisions for deterrent to future
> theft of copper wire. A prominent landscape feature at the main entry of the
> cemetery is to receive planting and irrigation to enhance the aesthetics of the
> cemetery.

VA786-17-P-0719 final contract, dated August 21, 2017, listed VCS's address as 20 NE Hogan

Drive, Gresham, Oregon 97030.

44.     The IGCE for VA786-17-P-0706, developed by Keith Royster on July 12, 2017,

was valued at $24,225.   The project scope of work was listed as:

> Sawcut existing asphalt and remove asphalt and base material 6 feet back from all
> sides of the drain inlet. Do not remove drain inlet; Inspect inlet piping for any leaks;
> Replace base rock and compact; Place new asphalt. Seal edges before installing
> new asphalt; Remove all trash, spoils and debris from site.

VA786-17-P-0706 final contract, dated August 21, 2017, listed VCS address as 20 NE Hogan

**Page 21 – Affidavit of Christopher Miller**                    **USAO Version Rev. April 2017**

Drive, Gresham, Oregon 97030.

**Veterans Choice Services: VA Portland Window Contract**

45. On October 1, 2017, VCS was awarded VA Contract VA260-18-P-2300. This contract was identified as an SDVOSB set-aside. An email, dated September 6, 2017, from VA CO Joshua Anderson to Adam Lowery at email address adam@veteranschoice.net stated, "This email is to notify you that you have been awarded contract VA260-18-P-2300 for window washing services at the Portland Healthcare System."

46. The contract was valued at $34,500 for the first year with an aggregate value of approximately $190,000. The periods of performance was identified as: Base Year: October 1, 2017 – September 30, 2018; Option Year One: October 1, 2018 – September 30, 2019; Option Year Two: October 1, 2019 – September 30, 2020; Option Year Three: October 1, 2020 – September 30, 2021; and Option Year Four: October 1, 2021 – September 30, 2022. The scope of work called for the following work at the Portland, Oregon VA Medical Center:

> Furnish all labor, supervision, management, management support, transportation, supplies, equipment, and materials, except VA-furnished space and utilities as identified in these specifications, necessary for accomplishment of complete window washing services as described herein. In addition to these services, incidental-cleaning functions not specifically listed but normally included, as general practice within the glazing maintenance industry will be provided. These shall include, but not be limited to, cleaning of insect and energy conservation screens, cleaning of window frames, sills and sashes, and replacement of component elements of window units damaged during accomplishment of contractual service.

47. The Award Decision Documentation Form listed that VCS was selected based upon being the lowest price bidder. VCS's contact was listed as: Point of Contact Adam Lowery, email adam@veteranschoice.net, address 20 NE Hogan Drive, Gresham, Oregon 97030.

48.     VCS's successful bid, dated August 24, 2017, showed Adam Lowery's signature as

the offeror on behalf of VCS.   It also showed Anthony Sessions' signature as VCS's president.

The total value of VCS's bid was $190,000.   Within its bid, Sessions provided his resume which

listed his employment at Valleyscapes from September 2016 to January 3, 2017.   However, he

listed his main contact information as email Anthonysessions@valleyscapes.net.

### Government Email Records & Search Warrant

49.     In August 2017, I requested and received the results of an electronic search of VA

government email accounts for VA Fort Logan Cemetery employees that participated in the

management and awarding of VCS's Fort Logan contract.   I utilized software to search the emails

and conducted numerous key word searches for emails pertaining to Valleyscapes and VCS.

Numerous emails between Sessions, Lowery, and Clark via their VCS's email accounts

(Anthony@veteranschoice.net, adam@veteranschoice.net, jon@veteranschoice.net) and VA staff

detailed the implementation of the Fort Logan contract.

50.     In October 2017, I requested an additional electronic search of VA government

email accounts for VA contracting employees which participated in the management and awarding

of numerous contracts to VCS.   I utilized software to search the emails and conducted numerous

key word searches for emails pertaining to Valleyscapes and VCS.   Additional emails between

Sessions, Lowery, and Clark via their VCS's and Valleyscapes' email accounts and VA staff

detailed the implementation of additional VCS government contracts.

51.     On December 4, 2017, I appeared before U.S. Magistrate Judge John Acosta,

District Of Oregon, and obtained a federal search warrant for information maintained in Sessions',

Clark's, and Lowery's Valleyscapes and VCS email accounts maintained by Microsoft

**Page 23 – Affidavit of Christopher Miller**          **USAO Version Rev. April 2017**

Corporation (Case No: 17-MC-637).   Microsoft provided a limited response with no content.

Microsoft additionally noted "Enterprise data covered by this request is owned and controlled by

the customer.   The customer is solely in control of the administrator account and is capable of

retrieving information more quickly and efficiently."

### Surveillance of Subject Premises

52.     On July 28 2017, I conducted surveillance of the listed business locations of

Valleyscapes and VCS.   The surveillance focused on neighboring buildings, 150 NE Hogan

Drive, Gresham, Oregon, and 16/20 NE Hogan Drive, Gresham, Oregon.   On the west side of 150

NE Hogan, I observed a large sign for Valleyscapes landscaping service.   Located directly south

of 150 NE Hogan was 16/20 NE Hogan Drive, an office building containing numerous suites

including 16/20 NE Hogan Drive, which also had a sign for Valleyscapes.   The north corner of

16/20 NE Hogan is located less than 100 feet from 150 NE Hogan.   See below photo.



53.      At approximately 8:56 a.m., I observed an unidentified Hispanic male walk from

150 NE Hogan to 20 NE Hogan with documents in his hand.   After several minutes he returned to

150 NE Hogan without the documents.   At approximately 9:23 a.m., I observed an unidentified

white male walk from 150 NE Hogan to 20 NE Hogan, then return to 150 NE Hogan within several

minutes carrying documents.   At approximately 9:25 a.m., I observed a second unidentified white

male walk from 150 NE Hogan to 20 NE Hogan.   He remained in 20 NE Hogan for approximately

ten minutes, then returned to 150 NE Hogan with documents in his hands.   At approximately 9:35

a.m., I observed a third unidentified white male walk from 150 NE Hogan to 20 NE Hogan.   He

returned to 150 NE Hogan moments later carrying documents.   At approximately 10:00 a.m., I

**Page 25 – Affidavit of Christopher Miller**              **USAO Version Rev. April 2017**

entered the public lobby of 16 NE Hogan and saw a board which listed the tenants, including

Valleyscapes.  Of note, VCS was not listed.  See below photo.



54.      On August 4 2017, I again conducted surveillance of the listed business locations of

Valleyscapes and VCS, 150 NE Hogan Drive and 16/20 NE Hogan Drive.  At 8:51 a.m., an

unidentified white male exited 150 NE Hogan Drive and walked toward 20 NE Hogan Drive.  He

had documents in his hand and entered the 20 NE Hogan Valleyscapes office.  At approximately

9:05 a.m., the white male departed the building and entered a white SUV and departed the parking

lot of 16 NE Hogan Drive.

55.      On August 08 2017, I conducted surveillance of 150 NE Hogan Drive, Gresham,

Oregon, and 16/20 NE Hogan Drive, Gresham, Oregon.  I observed and photographed a dark

colored truck bearing Oregon license plate D3 0023 parked near Valleyscapes' 20 NE Hogan

Drive entrance.  Of note, an Oregon Department of Motor Vehicle (DMV) check showed license

plate D3 0023 was registered to a 2016 Ford F150 in the name of Anthony W. Sessions.

56.      On August 11, 2017, I again conducted surveillance of 150 NE Hogan Drive and

16/20 NE Hogan Drive.  At approximately 6:36 a.m., I observed a dark colored truck bearing

**Page 26 – Affidavit of Christopher Miller**            **USAO Version Rev. April 2017**

Oregon license plate D3 0023 park in the parking lot of 16 NE Hogan Drive.   Prior DMV checks

showed the vehicle is registered to VCS owner Anthony Sessions.   A white male wearing a white

polo shirt and jeans exited the vehicle with a computer bag and entered the 150 NE Hogan Drive

office for Valleyscapes.   The white male matched the photo of Anthony Sessions.   At

approximately 8:40 a.m., I observed Sessions on his cellular phone standing in front of the

Valleyscapes office at 150 NE Hogan Drive.

57.     On August 25 2017, I conducted surveillance of 150 NE Hogan Drive and 16/20

NE Hogan Drive.   At approximately 6:45 a.m., I observed a dark colored truck bearing Oregon

license plate D3 0023 park in the parking lot of 16 NE Hogan Drive.   Prior DMV checks showed

the vehicle is registered to VCS owner Anthony Sessions.   A white male matching Sessions photo

and wearing a dark polo shirt and jeans exited the vehicle and entered the offices of Valleyscapes

at 20 NE Hogan Drive, Gresham, Oregon.   At approximately 7:15 a.m., Sessions exited the

Valleyscapes office and walked to his truck.   Sessions entered his vehicle to get a computer bag

and then re-entered the Valleyscapes 20 NE Hogan Drive office.

58.     On August 28 2017, I conducted an address check of 150 NE Hogan Drive and

16/20 NE Hogan Drive.   At approximately 3:00 p.m., I observed a dark grey truck bearing OR

license plate D3 0023 registered to Anthony Sessions parked in the 16 NE Hogan Drive parking

lot.   The truck was parked nearest to the Valleyscapes 20 NE Hogan Drive office.

59.     On November 14, 2017, FBI special agents conducted surveillance of Anthony

Sessions starting in the vicinity of Sessions' residence, located at 15558 Broken Top Avenue,

Sandy, Oregon.   At 8:45 a.m., Sessions' Ford F150 bearing OR license plate D3 0023 departed

the residence and traveled to 20 NE Hogan Drive, Gresham.   Sessions parked the truck into a

parking spot just northwest of 20 NE Hogan Drive.   Around 9:48 a.m., an unknown male walked

out to the Ford F150 and opened a door on the driver's side of the vehicle.   The male then walked

back toward the workplace and was no longer observed.   At 12:22 p.m., Sessions walked out to

the Ford F150 and went to the passenger's side of the vehicle, and then returned to the vicinity of

the workplace.   During surveillance, FBI agents observed several people walking between 150

NE Hogan and 20 NE Hogan.   Several of these where observed carrying documents from one

building and then returning to the other building without said documents.

60.     On January 11 2018, I again conducted surveillance of 150 NE Hogan Drive and 20

NE Hogan Drive.   At approximately 9:01 a.m., I observed a truck bearing OR plate D3 0023

arrive at 16 NE Hogan Drive parking lot and park nearest to the 20 NE Hogan Drive location.

Shortly thereafter, I observed Sessions exit the vehicle with a dark bag and enter the 20 NE Hogan

Drive office of Valleyscapes.

61.     In summary, the above shows that VCS and Valleyscapes, namely Anthony

Sessions, Adam Lowery, and Jonathan Clark, continually utilized office locations of Valleyscapes

and VCS to facilitate their fraud scheme to illegitimately bid on and receive government contracts.

Sessions, Lowery, and Clark have continually provided false statements to the VA concerning the

overlapping business interests of VCS and Valleyscapes, which resulted in VCS fraudulently

receiving SDVOSB status.   They used the SDVOSB status to bid on government contracts and

received government contracts and monies to which they were not entitled.

62.     As described above and in Attachment B, this application seeks permission to

search for records that might be found on the Premises, in whatever form they are found.   One

form in which the records will likely be found is data stored on a computer's hard drive, on other

**Page 28 – Affidavit of Christopher Miller**              **USAO Version Rev. April 2017**

storage media, or other digital devices, including cell phones (hereinafter collectively referred to as digital devices).   Thus, the warrant applied for would authorize the seizure of electronic storage media or the copying of electronically stored information, all under Rule 41(e)(2)(B).

63.     There is probable cause to believe, and I do believe, that records will be stored on a digital device because, based on my knowledge, training, and experience, I know complex fraud schemes, such as contract fraud, involve digitized records and electronic communications which are often completed and maintained on digital devices, i.e. computers.

a.     Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a digital device, deleted, or viewed via the Internet.   Electronic files downloaded to a digital device can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using forensic tools.   When a person "deletes" a file on a digital device, the data contained in the file does not actually disappear; rather, that data remains on the digital device until it is overwritten by new data.   Therefore, deleted files or remnants of deleted files, may reside in free space or slack space—that is, in space on the digital device that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a digital device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

b.     Wholly apart from user-generated files, digital devices—in particular, internal hard drives—contain electronic evidence of how a digital device has been used, what it has been used for, and who has used it.   To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating

**Page 29 – Affidavit of Christopher Miller**                    **USAO Version Rev. April 2017**

system or application operation, file system data structures, and virtual memory "swap" or paging files. Digital device users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

   c.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

   d.  Based on actual inspection of other evidence related to this investigation, financial records, invoices, emails, and contracting documents, I am aware that digital devices were used to generate, store, and print documents used in the contract fraud scheme. Thus, there is reason to believe that there is a digital device currently located on the Premises.

64.  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital device in the Premises, because, based on my knowledge, training, and experience, I know:

   a.  Data on the digital device can provide evidence of a file that was once on the digital device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store

**Page 30 – Affidavit of Christopher Miller**     **USAO Version Rev. April 2017**

configuration information on the digital device that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a digital device can also indicate who has used or controlled it. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the digital device at a relevant time. Further, forensic evidence on a digital device can show how and when it was accessed or used. Such "timeline" information allows the forensic analyst and investigators to understand the chronological context of access to the digital device, its use, and events relating to the offense under investigation. This "timeline" information may tend to either inculpate or exculpate the user of the digital device. Last, forensic evidence on a digital device may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information on a digital device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping

program" to destroy evidence on the digital device or password protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a digital device (e.g., logs indicating that the incriminating information was accessed with a particular program).

      c.     A person with appropriate familiarity with how a digital device works can, after examining this forensic evidence in its proper context, draw conclusions about how digital devices were used, the purpose of their use, who used them, and when.

      d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device that are necessary to draw an accurate conclusion is a dynamic process.   While it is possible to specify in advance the records to be sought, electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.   Whether data stored on a digital device is evidence may depend on other information stored on the digital device and the application of knowledge about how a digital device behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.     Further, in finding evidence of how a digital device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a digital device.   For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

      f.     In complex contract fraud scheme I know electronic records and invoices are sent electronically to the government for payment in furtherance of the scheme.   I

know that when an individual uses a digital device to commit a crime, such as contract fraud, the individual's digital device will generally serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.   The digital device is an instrumentality of the crime because it is used as a means of committing the criminal offense.   The digital device is also likely to be a storage medium for evidence of crime.   From my training and experience, I believe that a digital device used to commit a crime of this type may contain: data that is evidence of how the digital device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

65.     In most cases, a thorough search of the Premises for information that might be stored on a digital device often requires the seizure of the device and a later, off-site review consistent with the warrant.   In lieu of removing a digital device from the Premises, it is sometimes possible to image or copy it.   Generally speaking, imaging is the taking of a complete electronic picture of the digital device's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the digital device and to prevent the loss of the data either from accidental or intentional destruction.   This is true because:

a.     As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.   Analyzing evidence of how a digital device has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.   As explained above, because the warrant

calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine digital devices to obtain evidence.   Digital devices can store a large volume of information.   Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.      Records sought under this warrant could be stored in a variety of formats that may require off-site reviewing with specialized forensic tools.   Similarly, digital devices can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.   Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.   The vast array of hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.   However, taking the digital device off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

66.      *Nature of the examination*.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which I apply would permit seizing, imaging, or otherwise copying digital devices that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the device or information consistent with the warrant.   The later review may require techniques, including but not limited to computer-assisted scans of the entire device, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

67.      The initial examination of the digital device will be performed within a reasonable

**Page 34 – Affidavit of Christopher Miller**                    **USAO Version Rev. April 2017**

amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

68. If, at the conclusion of the examination, law enforcement personnel determine that Particular files or file folders on the digital device do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

69. If an examination is conducted, and the digital device does not contain any data falling within the ambit of the warrant, the government will return the digital device to its owner within a reasonable period of time following the search and will seal any image of the digital device, absent further authorization from the Court.

70. The government may retain the digital device as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the digital device and/or the data contained therein.

71. The government will retain a forensic image of the digital device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions

regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

72.    The government has made the following prior efforts in other judicial fora to obtain evidence sought under the warrant: grand jury subpoenas, search warrant for email accounts, and 18 U.S.C. § 2703(d) order.

### Filter Team

73.    The government will utilize a "filter" agent to mitigate the review of privileged communications, if necessary.   A special agent not assigned to investigate this case will be designated as the "filter" agent and will utilize software to search the email records for potential non-relevant and privileged communications, i.e. attorney-client communications.   The "filter" agent will separate the identified privileged communications and then provide the remaining non-privileged communications available for search by the case agent.

### Conclusion

74.    Based on the foregoing, I have probable cause to believe, and I do believe, that Anthony Sessions, Jonathan Clark, and Adam Lowery provided false statements to the VA and thus committed fraud in their application for SDVOSB certification and subsequent bids submitted for government contracts.   This was done in violation of Title 18, United States Code, Section 371, Conspiracy; Title 18, United States Code, Section 1343, Wire Fraud; and Title 18, United States Code, Section 1001, False Official Statements, and evidence of those offenses, as more fully described in Attachment B hereto, is presently contained in business offices of Valleyscapes and

VCS, which are more fully described above and in Attachments A-1, A-2, A-3, and A-4 hereto.   I

therefore request that the Court issue a warrant authorizing a search of the Subject Premises

described in Attachments A-1, A-2, A-3, and A-4 for the items listed in Attachment B and the

seizure and examination of any such items found.

75.     Prior to being submitted to the Court, this affidavit, the accompanying application,

and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA)

Donna Maddux, and AUSA Maddux advised me that in her opinion the affidavit and application

are legally and factually sufficient to establish probable cause to support the issuance of the

requested warrant.

### Request for Sealing

76.     I further request that the Court issue an order sealing, until further order of the

Court, all papers submitted in support of the requested search warrant, including the application,

this affidavit, the attachments, and the requested search warrant.   I believe that sealing these

documents is necessary because the information to be seized is relevant to an ongoing

investigation, and any disclosure of the information at this result in the destruction of or tampering

with evidence or otherwise seriously jeopardize an investigation.   Premature disclosure of the

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 37 – Affidavit of Christopher Miller**              **USAO Version Rev. April 2017**

contents of the application, this affidavit, the attachments, and the requested search warrant may

adversely affect the integrity of the investigation.

CHRISTOPHER MILLER
Special Agent, VA OIG CID

Subscribed and sworn to before me this _____ day of February 20 18

HONORABLE PAUL PAPAK
United States Magistrate Judge

## ATTACHMENT A-1

### Property to Be Searched

#### 150 NE Hogan Drive, Gresham, Oregon 97030

Subject premises is a multi-level mixed use office building, containing business offices, located at 150 NE Hogan Drive, Gresham, Oregon 97030. 150 NE Hogan Drive is a two story, light gray colored stucco building with some incomplete blue trim on the lower portion of the building and attached industrial sized two car drive-through garage, located off of Hogan Drive. The building appears to be a converted gas station with a covered parking area in the entrance off of Hogan Drive and has both offices and an internal parking garage for the storage of equipment. The roof is flat and the primary entrance door is light gray in color with the numbers 150, in blue, clearly visible on the office window adjacent to the main entrance. In addition, above the entrance door and 150 there is a white sign for "VALLEYSCAPES." In the entrance off of Hogan Drive there are multiple signs labeled, "VALLEYSCAPES, Landscape Maintenance Services." See attached photos.

## ATTACHMENT A-2

### Property to Be Searched

### 20 NE Hogan Drive, Suite 110, Gresham, Oregon 97030

Subject premises is a multi-level mixed use office building, containing business offices, located at 16 NE Hogan Drive, Gresham, Oregon 97030. The aforementioned is owned and leased out by Burlingame Properties LLC. Within 16 NE Hogan Drive are numerous suites numbered both 16 NE Hogan Drive and 20 NE Hogan Drive. Subject premises contains the following suite leased by Valleyscapes at 20 NE Hogan Drive, Suite 110. 20 NE Hogan Drive, Suite 110 is located on the first floor of the building in the north corner and is accompanied by a large exterior sign for Valleyscapes. The overall building is dark in color, with a pitched roof, large windows, and is designated by a large sign for Burlingame Square. The front entrance, located on the east side of the building, mostly consists of glass doors and windows. A sign, located in the interior lobby of the building shows "VALLEYSCAPES" as one of the first floor tenants. The building is surrounded by a parking lot on the east and south sides of the building. See attached photos.

## ATTACHMENT A-3

### Property to Be Searched

### 16 NE Hogan Drive, Suite 112, Gresham, OR 97030

Subject premises is a multi-level mixed use office building, containing business offices, located at 16 NE Hogan Drive, Gresham, Oregon 97030. The aforementioned is owned and leased out by Burlingame Properties LLC. Within 16 NE Hogan Drive is numerous suites numbered both 16 NE Hogan Drive and 20 NE Hogan Drive. Subject premises consists of the following suites leased by Valleyscapes at 16 NE Hogan Drive, Suite 112. 16 NE Hogan Drive, Suites 112 is located on the first floor of the building in the southeast corner and does not appear to have an external entrance/exit. It is only accessible via an internal entrance through a common hallway. The overall building is dark in color, with a pitched roof, large windows, and is designated by a large sign for Burlingame Square. The front entrance, located on the east side of the building, mostly consists of glass doors and windows. A sign, located in the interior lobby of the building shows "VALLEYSCAPES" as one of the first floor tenants. The building is surrounded by a parking lot on the east and south sides of the building. See attached photos.

USAO Version Rev. July 2015

**ATTACHMENT A-4**

**Property to Be Searched**

**16 NE Hogan Drive, Suite 110, Gresham, OR 97030**

Subject premises is a multi-level mixed use office building, containing business offices, located at 16 NE Hogan Drive, Gresham, Oregon 97030.  The aforementioned is owned and leased out by Burlingame Properties LLC.  Within 16 NE Hogan Drive are numerous suites numbered both 16 NE Hogan Drive and 20 NE Hogan Drive.  Subject premises consists of the following suite leased by Valleyscapes and Veterans Choice Services: 16 NE Hogan Drive, Suite 110.  16 NE Hogan Drive, Suite 110 is located on the west side of first floor of the building and is only accessible via an internal entrance through a common hallway.  The overall building is dark in color, with a pitched roof, large windows, and is designated by a large sign for Burlingame Square.  The front entrance, located on the east side of the building, mostly consists of glass doors and windows.  A sign, located in the interior lobby of the building shows "VALLEYSCAPES" as one of the first floor tenants.  The building is surrounded by a parking lot on the east and south sides of the building.  See attached photos.

# Attachment A-1

## 150 NE Hogan Drive, Gresham, OR



**Office Location of Valleyscapes**

# Attachment A-1
# 150 NE Hogan Drive, Gresham, OR

**150 NE Hogan Drive Office Location of Valleyscapes**
**Includes offices and open storage areas**



# Attachment A-2, A-3, A-4

## 16 NE Hogan Drive contains both
## 16 NE Hogan Drive, #110, 112, Gresham, OR
## 20 NE Hogan Drive, #110, Gresham, OR



**Entrance to 16/20 NE Hogan Dr.**

**Entrance to 20 NE Hogan Dr.**
**Suite 110**

# Attachment A-2, A-3, A-4

## 16 NE Hogan Drive contains both
## 16 NE Hogan Drive, #110, 112, Gresham, OR
## 20 NE Hogan Drive, #110, Gresham, OR



16/20 NE Hogan Drive Tenant List

# Attachment A-2, A-3, A-4

## 16 NE Hogan Drive contains both
## 16 NE Hogan Drive, #110, 112, Gresham, OR
## 20 NE Hogan Drive, #110, Gresham, OR



**First Floor Contains 16 NE Hogan Dr. Suite 112**

**16 NE Hogan Dr. Suite 110**

**20 NE Hogan Dr. Suite 110**

Note: Floorplan was provided By Burlingame Properties LLC. SA Miller did not make alterations to handwritten notes.

## ATTACHMENT B

### Items to Be Seized

The items to be searched for, seized, and examined, are those items on the premises located at 150 NE Hogan Drive, Gresham, Oregon; 20 NE Hogan Drive, Suite 110, Gresham, Oregon; 16 NE Hogan, Suite 112, Gresham, Oregon; and 16 NE Hogan Drive, Suite 110, Gresham, Oregon, referenced in Attachments A-1, A-2, A-3, and A-4, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 18, United States Code, Section 371, Conspiracy; Title 18, United States Code, Section 1343, Wire Fraud; and Title 18, United States Code, Section 1001, False Official Statements,. The items to be seized cover the period of January 1, 2016, through the date of the execution of the search warrant.

1.      The items referenced above to be searched for, seized, and examined are as follows:

a.      Financial records of Valleyscapes, Veterans Choice Services, Adam Lowery, Jonathan Clark, and Anthony Sessions including bank statements, cancelled checks, deposit records, check stubs, payment ledgers, checkbook registers, deposit slips, loans, documentation of assets and liabilities, general ledgers, general journals, cash, cash receipts, cash disbursement journals, accounts receivable journals, accounts payable journals, contracts, billing information, and records of bills relating to the receipt of currency or other forms of payment.

b.      Records of Valleyscapes, Veterans Choice Services, Adam Lowery, Jonathan Clark, and Anthony Sessions company credit card, gas fleet cards, credit card, and automatic teller machine activity, including credit and/or debit cards, and automatic teller machine records.

c. Valleyscapes and Veterans Choice Services job files, including contracts, agreements, proposals, invoices, bids, bid sheets, purchase orders, payment records, billing or invoicing worksheets, and job timecards pertaining to U.S. Government contracts for Veterans Choice Services and Valleyscapes.

d. QuickBooks, Excel, Deltek, and other computer accounting files and records, including all spreadsheets relating to U.S. Government projects, income, expenses, employees, or financial information.

e. Ledgers, profit distribution reports, financial statements, profit and loss statements, balance sheets, income statements, or work progress reports.

f. Valleyscapes, Veterans Choice Services, Adam Lowery, Jonathan Clark, and Anthony Sessions payroll and payroll tax records including timecards, timesheets, handwritten hour summaries, payroll sheets/journals, payroll check registers, canceled payroll checks, paycheck stubs, Forms W-2, Forms W-4, Forms 941, Forms 940, and Forms 1099.

g. Adam Lowery, Jonathan Clark, Anthony Sessions, and any other unknown Veterans Choice Services employee files, including applications for employment, background checks, contact information, hiring information, hire dates, fire dates, layoff dates, job descriptions, and job assignments.

h. Records relating to the employment and payment of compensation including employment contracts, canceled checks for expense reimbursements, personnel files, associated health insurance, worker's compensation insurance, and/or retirement plans.

**Page 2 – Attachment B**                                  **USAO Version Rev. Jan. 2017**

     i.     Business licenses, stock certificates, logs of stock purchases and redemptions, joint venture agreements, teaming agreements, subcontract agreements, lease agreements, and employee sharing agreements.

     j.     Calendar books, log books, appointment books, and telephone number listings reflecting employment information, customer information, and vendor information.

     k.     Documents reflecting travel expenditures to include copies of travel tickets, hotel bills, gas receipts, and copies of payment items comprising evidence of expenditures and liabilities.

     l.     Copies of tax returns and related tax preparation files to include work papers, schedules, receipts, and any other source documents comprising evidence of asset acquisition, expenditures, and sources of income.

     m.     Notes payable and receivable, IOUs, and other recordation of debts comprising evidence of loans and expenses.

     n.     Papers, records, documents, files, notes, memos, mail, or other materials representing residency, ownership, occupancy, dominion, or control of the premises referenced above and described in Attachments A-1, A-2, A-3, and A-4.

     o.     Records or keys showing possession of safe deposit boxes, safes, storage units, and any other type of storage areas, including passwords and/or access codes for access during the searches.

     p.     Correspondence and communications, whether electronic or in paper format, between Valleyscapes and Veterans Choice Services employees, and the

Valleyscapes and Veterans Choice Services, including employees Adam Lowery, Jonathan Clark, and Anthony Sessions, and subcontractors, competitors, and government employees, including VA contracting personnel.

q. Information pertaining to transactions with and/or correspondence with the U.S. Government and related to the offenses set forth above.

r. Computers, storage media, or digital devices used as a means to commit the violations described above, including desktop computers, laptop computers, and tablets belonging to or used by Valleyscapes and Veterans Choice Services employees, including Adam Lowery, Jonathan Clark, Anthony Sessions, to create, store, and communicate regarding the bidding, implementation, management and re-numeration of government contracts.

2. As used in this attachment, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

3. For any computer or storage medium whose seizure is otherwise authorized by

this warrant and any computer, storage medium, or digital device that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter "Computer"):

a.  Evidence of who used, owned, or controlled the Computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence.

b.  Evidence of software that would allow others to control the Computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

c.  Evidence of the lack of such malicious software.

d.  Evidence indicating how and when the Computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime under investigation and to the Computer user.

e.  Evidence indicating the Computer user's state of mind as it relates to the crime under investigation.

f.  Evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence.

g.  Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Computer.

h.  Evidence of the times the Computer was used.

**Page 5 – Attachment B**                                          **USAO Version Rev. Jan. 2017**

i.      Passwords, encryption keys, and other access devices that may be necessary to access the Computer.

j.      Documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer.

k.      Records of or information about Internet Protocol addresses used by the Computer.

l.      Records of or information about the Computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

m.      Contextual information necessary to understand the evidence described in this attachment.

**Search Procedure**

4.      The search for data capable of being read, stored, or interpreted by a computer or storage device, may require authorities to employ techniques, including imaging any computer or storage media and computer-assisted scans and searches of the computers and storage media, that might expose many parts of the computer to human inspection in order to determine whether it constitutes evidence as described by the warrant.

5.      The initial examination of the computer and storage media will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.  If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of

execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

6.      If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the computer and storage media do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

7.      If an examination is conducted, and the computer and storage media do not contain any data falling within the ambit of the warrant, the government will return the computer and storage media to its owner within a reasonable period of time following the search and will seal any image of the computer and storage media, absent further authorization from the Court.

8.      The government may retain the computer and storage media as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the computer and storage media and/or the data contained therein.

9.      The government will retain a forensic image of the computer and storage media for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government

avoided its obligations by destroying data or returning it to a third party.